**Affirmed and Opinion filed September 4, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00661-CV

**JOHN RUSSELL COFFMAN, Appellant**

**V.**

**CELESTE ELANE COFFMAN MELTON, Appellee**

**On Appeal from the 359th District Court
Montgomery County, Texas
Trial Court Cause No. 13-05-05212-CV**

## O P I N I O N

John Russell Coffman appeals from the issuance of a second protective order preventing him from having contact with his ex-wife, Celeste Elane Coffman Melton, among others. In two issues, John challenges the legal and factual sufficiency of the evidence to support the court's order and contends the court

erred in awarding attorney's fees to Celeste.   We affirm.[1]

## *Background*

During the pendency of divorce proceedings, the trial court signed an Agreed Final Protective Order against John on June 17, 2011, set to expire on June 9, 2013.  The order was issued to protect Celeste, the couple's three children, and Celeste's parents.  In this first protective order, the trial court found and the parties agreed that it was necessary and in the best interest of Celeste and other members of her family to protect them from John's continual calls, harassment, and threats.  The court further specifically found that John had committed family violence and family violence was likely to occur again in the future.

In the divorce decree signed January 5, 2012, the trial court noted the existence of the original protective order, then still in effect, and further found that John "has a history or pattern of family violence during the two years preceding the date of the filing [of] the suit or during the pendency of the suit."  The court also stated that in consideration of the commission of family violence, it was in the best interest of the children to deny John visitation rights.  Additionally, the court again referenced the protective order in holding John was not entitled to any access to the children.[2]

In May 2013, less than one month prior to the expiration of the first

---

[1] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Ninth District of Texas.  *See* Tex. Gov't Code § 73.001.  In cases transferred from one court of appeals to another, the transferee court must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court.  *See* Tex. R. App. P. 41.3.

[2] The decree also contains a provision ordering John to appear before the court on March 13, 2013, "to re-evaluate visitation between John . . . and the minor children."   There is no indication in the record, however, as to whether this appearance occurred or, if so, what changes may have resulted.

protective order, Celeste applied for a second protective order.[3]  In her application, she stated that John had "committed acts of abuse in the past towards [her] that constitute family violence [including] genuine threats of substantial harm from physical injury to Celeste and physical injury that resulted in substantial harm to [her]."  She alleged that "during the pendency of the [first] order John . . . indicated that if he ever gets visitation rights to the children, he will take them out of . . . Texas, and never return them."  She further alleged that John has both orally and through text messages threatened to take the children after the expiration of the first protective order and keep them away from her for the same amount of time that he was ordered to stay away.

At a hearing on the application, Celeste testified that since the issuance of the first order, John had violated its terms by coming within 200 feet of her and the children while they were at church.  She explained that she stayed inside the church with the children when she realized John was outside because she was afraid and did not know what he was going to do.  During her testimony, Celeste further confirmed that the allegations she made in her first application for a protective order—that John had physically abused her, spit on her, and cursed her—were all true.  She then stated that John also violated the terms of the first protective order by plastering false and vulgar things about her and her family on the walls of the couple's home that was to be sold under the terms of the divorce decree.  Finally, she testified, "I am scared [John] is going to do something to me. I'm going to be on 20/20 dead so he can take the kids."

During cross-examination, Celeste acknowledged that she had not heard from John in almost two years, the violations she testified about occurred before

---

[3] The application sought protection for the same people protected by the first order with the exception of Celeste's father.

3

the divorce was finalized, and her current fears of John were the same fears she had before the divorce was final.

After Celeste's testimony, the trial judge noted that she remembered the facts presented in support of the original protective order and described them as "egregious and frightening." In an order signed June 4, 2013, the trial court granted Celeste's application for a protective order and ordered John to pay her attorney's fees of $2,500. In its findings of fact and conclusions of law, the trial court specifically found, among other things, that "family violence has occurred . . . and is likely to occur again in the future."

### *Governing Law*

In his first issue, John challenges the legal and factual sufficiency of the evidence to support the trial court's findings that family violence has occurred and is likely to occur again in the future.[4] In reviewing a trial court's findings of fact for legal and factual sufficiency, we apply the same standards that we apply in reviewing jury findings. *Ulmer v. Ulmer*, 130 S.W.3d 294, 299 (Tex. App.—Houston [14th Dist.] 2004, no pet.). In reviewing a legal-sufficiency challenge, we consider evidence in the light most favorable to the finding and indulge every

---

[4] It has been noted that there is some disagreement among the courts of appeals regarding whether issuance of a family violence protective order should be challenged under an abuse-of-discretion standard or for the legal and factual sufficiency of the evidence supporting the order. *Warren v. Earley*, No. 10-10-00428-CV, 2011 WL 3850035, at *2, n.1 (Tex. App.—Waco August 31, 2011, no pet.) (mem. op.) (noting disagreement). At least one court of appeals has held that because a protective order provides relief similar to that provided by an injunction, the proper standard of review is abuse of discretion. *See Franklin v. Benton-Elam*, No. 06–13–00126–CV, 2014 WL 1722165, at *7 (Tex. App.—Texarkana March 14, 2014, no pet.) (mem. op.); *In re Epperson*, 213 S.W.3d 541, 542–43 (Tex. App.—Texarkana 2007, no pet.). However, the majority position, followed by this court and the Ninth Court of Appeals, is that such orders can be challenged for legal and factual sufficiency. *See, e.g., Dalbosco v. Seibert*, No. 14-11-00429-CV, 2012 WL 1795108, at *5-7 (Tex. App.—Houston [14th Dist.] May 17, 2012, pet. denied) (analyzing sufficiency of the evidence to support protective order); *In re M.G.M.*, 163 S.W.3d 191, 201-02 (Tex. App.—Beaumont 2005, no pet.) (same); *see also Warren*, 2011 WL 3850035, at *2, n.1 (collecting cases).

reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). If more than a scintilla of evidence exists, it is legally sufficient and we will uphold the finding. *Lozano v. Lozano*, 52 S.W.3d 141, 145 (Tex. 2001). To rise above a scintilla, the evidence offered to prove a vital fact must do more than create a mere surmise or suspicion of its existence; it must rise to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id*.

In reviewing a factual-sufficiency challenge, we weigh all of the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). We will overturn the finding only if it is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Id*. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 615-16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). We will not substitute our judgment for that of the trial court merely because we might reach a different conclusion. *Id*. at 616.

Because Celeste filed her application less than a month before expiration of the original protective order, Family Code section 82.0085 applies to this case:

> ### § 82.0085 Application Filed Before Expiration of Previously Rendered Protective Order
>
> (a) If an application for a protective order alleges that an unexpired protective order applicable to the respondent is due to expire not later than the 30th day after the date the application was filed, the application for the subsequent protective order must include:
>
>> (1) a copy of the previously rendered protective order attached to the application or, if a copy of the previously rendered protective order is unavailable, a statement that the order is unavailable to the applicant and that a copy of the order will be filed with the court before the hearing on the

5

application; and

> (2) a description of the threatened harm that reasonably places the applicant in fear of imminent physical harm, bodily injury, assault, or sexual assault.

> (b) The procedural requirements for an original application for a protective order apply to a protective order requested under this section.

Tex. Fam. Code § 82.0085.

Before a trial court can issue a protective order, it must make findings that family violence has occurred and is likely to occur again in the future. *See id.* § 85.001(b); *Colvin v. Colvin*, No. 03-03-00234-CV, 2004 WL 852266, at *6 (Tex. App.—Austin Apr. 22, 2004, no pet.) (mem. op.) ("Both findings are required before a court may issue a protective order under the family code.").[5] "Family violence" is defined, in pertinent part, as "an act by a member of a family . . . against another member of the family . . . that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself." Tex. Fam. Code § 71.004(1). "In cases involving protective orders against family . . . violence, evidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue this behavior in the future." *Flanigan v. Glasgow*, No. 04-11-00516-CV, 2012 WL 3104419, at *2 (Tex. App.—San Antonio Aug. 1, 2012, pet. denied) (mem. op.) (citing *Teel v. Shifflett*, 309 S.W.3d 597, 604 (Tex. App.—Houston [14th Dist.] 2010, pet. denied)).

---

[5] Section 85.002 provides an exception to the requirements of section 85.001 for when (1) the party against whom the order was rendered violated the order and (2) the order expired after the violation but before issuance of a new order. Tex. Fam. Code § 85.002. In such circumstances, a new order may issue without the necessity of making the findings required under section 85.001. Here, the second order issued prior to expiration of the first protective order, so section 85.002 does not apply.

6

### *Legal Sufficiency*

In regards to his legal-sufficiency challenge, John begins by arguing that Celeste was barred by the doctrine of res judicata from relying upon evidence of occurrences predating the divorce decree to prove that family violence has occurred and is likely to occur in the future. As John points out, Celeste's attorney acknowledged at the hearing that they would not be able to prove any violence occurred after the institution of the first protective order, which was prior to entry of the decree. Res judicata precludes litigation of claims that have been finally adjudicated or that arise out of the same subject matter and that could have been litigated in the prior action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). It requires proof of (1) the existence of a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a subsequent action based on the same claims that were or could have been raised in the prior action. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

According to John, the facts predating the divorce decree "were litigated in the original protective order proceeding [and] incorporated into the final decree"; thus, they cannot be used to obtain a second protective order. In other words, John posits that having relied on the pre-decree evidence for one protective order, Celeste cannot rely on the same evidence in obtaining a second protective order, extending the period of protection for another two years. This argument, however, misapprehends the nature of res judicata and is without support in the Family Code or case law.

John relies primarily on the case of *Brownlee v. Daniel*, No. 06-11-00136-CV, 2012 WL 3022660 (Tex. App.—Texarkana July 25, 2012, no pet.) (mem. op.), for the proposition that, in a post-decree protective order application, evidence of

pre-decree family violence may only be used to corroborate other evidence of post-decree family violence and cannot by itself support issuance of a post-decree protective order. However, *Brownlee* is readily distinguishable from the present case.

In *Brownlee*, the applicant sought a post-decree protective order based on allegations of family violence even though the conservatorship order in the divorce decree did not contain a finding of family violence. *Id*. at *1.[6] The court of appeals explained that "all issues set forth in the decree regarding conservatorship are res judicata of that issue at the time of the decree." *Id*. at *6. Because the issue of family violence was relevant to conservatorship and the best interest of the children and the applicant could have raised it in the divorce proceedings but did not, she was barred by the doctrine of res judicata from relying on evidence of pre-decree family violence to obtain a post-decree protective order. *Id*. at 6-7.

Here, we have the opposite situation: rather than the absence of a finding of family violence, the divorce decree in this case contains an express finding that family violence had occurred. The trial court in fact used the finding in denying John access to the children. Thus, in pursuing her application for a second protective order, Celeste was not attempting to use pre-decree facts to prove something that was not established in the decree, she was using pre-decree facts to prove something that was, in fact, already established in the decree. John's reliance on *Brownlee* is therefore misplaced.[7]

---

[6] The applicant actually obtained the protective order from a different court than the one that issued the decree. *See Brownlee*, 2012 WL 3022660, at *1.

[7] Although the applicant in *Brownlee* did not directly seek to modify the conservatorship order, the court found the effect the protective order had on the conservatorship order to be analogous to the effects usually sought in traditional modification proceedings. 2012 WL 3022660, at *6. As the *Brownlee* court explained, a party attempting to modify a prior order entered in a suit affecting the parent-child relationship must establish that there has been a

As stated above, res judicata requires proof that the subsequent action is based on claims that were or could have been raised in the prior action. *Joachim*, 315 S.W.3d at 862. It does not apply to evidentiary rulings. *See Turner v. Roberson*, No. 05-11-01272-CV, 2013 WL 2152636, at *5 (Tex. App.—Dallas May 17, 2013, no pet.). An application for a new protective order under Texas Family Code section 82.0085 seeks new and different relief not sought in the original order (i.e., an additional period of protection) and which could not have been sought in the prior proceeding; thus, the application was not barred by res judicata.[8] *Cf. Fluor Daniel, Inc. v. H.B. Zachry Co., Inc.*, 1 S.W.3d 166, 170 (Tex. App.—Corpus Christi 1999, pet. denied) (holding action to enforce arbitration award was new and different cause of action from underlying dispute that was arbitrated). The governing statutes authorizing a new protective order do not prohibit proof of events occurring before issuance of the prior order. *See* Tex. Fam. Code §§ 82.0085, 85.001(b). Section 82.0085 requires only that the application for a subsequent order attach the prior order and describe the threatened harm. *Id.* § 82.0085(a). Section 85.001 requires proof that family

---

material and substantial change in circumstances since the date of the rendition of the prior order. *Id.* (citing Tex. Fam. Code § 156.101(a)(1)(A)). The protective order in this case does not contradict or modify the terms of the conservatorship order in the divorce decree; in fact, they are in sync.

The other cases John cites are equally unavailing. In *Bates v. Tesar*, the court explained that under the doctrine of res judicata, a conservatorship order establishes the best interest of the children as of the time of divorce, so that the party who was awarded sole managing conservatorship in the decree did not have to rebut the presumption that joint managing conservatorship was in the children's best interest in a modification proceeding. 81 S.W.3d 411, 421-22 (Tex. App.—El Paso 2002, no pet.). Another case cited by John, *Mower v. Boyer*, is not a protective-order case and involved collateral estoppel and not res judicata. 811 S.W.2d 560 (Tex. 1991). Neither of these cases has any application under the present circumstances.

[8] Under section 85.001, a court may render a protective order for a period of more than two years only if the court finds that the individual who is the subject of the protective order (1) caused serious bodily injury to the applicant or a member of the applicant's family or household, or (2) was the subject of two or more previous protective orders meeting certain additional requirements. Tex. Fam. Code § 85.001 (incorporating § 85.025(a-1)).

violence has occurred in the past and is likely to occur again in the future. *Id.* §
85.001(b).

Although all of John's legal-sufficiency arguments are premised on his
position that the court could not consider evidence of events predating the divorce
decree, which we reject above, he cannot prevail on these arguments in any event.
Celeste testified to John's past acts of family violence, which included him spitting
on, cursing at, and physically abusing her. Celeste also testified about John's two
violations of the first protective order, including plastering vulgarities about her in
the family home and coming within 200 feet of her and the children when they
were at church. In addition, the trial judge noted the evidence in the hearing on the
original protective order demonstrated "egregious and frightening" acts of family
violence.[9] The trial court also had in hand the first Agreed Final Protective Order
in which John agreed it was necessary and in the best interest of Celeste, the
couple's three children, and Celeste's parents that the order be issued. Celeste
additionally testified regarding her fears of future violence. Reviewing the
evidence in the light most favorable to the court's findings and indulging every
reasonable inference in support thereof, we conclude that there was more than a
scintilla of evidence supporting the trial court's findings that family violence has
occurred and is likely to occur again in the future. *See* Tex. Fam. Code §
85.001(b); *City of Keller*, 168 S.W.3d at 822.

### *Factual Sufficiency*

John next asserts that there is factually insufficient evidence to support the
trial court's findings. Specifically, John argues that Celeste's testimony that she
continues to fear John committing violence in the future was insufficient to support

---

[9] John acknowledges in his appellate briefing that the trial judge took judicial notice of
the proceedings on the first protective order.

the court's finding that violence was likely to occur in the future. He points out that he had not seen or spoken to Celeste since before the divorce decree was rendered and there was no evidence he had committed any acts of violence since the issuance of the first protective order.

As discussed above, there was evidence of past violence that the trial judge had heard and described as "egregious and frightening." Evidence of past violence can constitute sufficient evidence that future violence is likely. *See, e.g., In re Epperson*, 213 S.W.3d 541, 544 (Tex. App.—Texarkana 2007, no pet.) ("Oftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order."); *Banargent v. Brent*, 14-05-00574-CV, 2006 WL 462268, at *2 (Tex. App.—Houston [14th Dist.] Feb. 28, 2006, no pet.) (mem. op.) ("While past violence does not mandate a finding of likely future violence, it can support such a finding in some instances . . . ."). Additionally, there was evidence here that John had twice violated the original protective order. And, Celeste testified regarding her fears that John would harm her in the future or kidnap their children.[10]

Although John suggests that these fears are not reasonable because they are the same fears Celeste had prior to the divorce-decree becoming final, he did not offer any authority in support of this suggestion. Celeste testified that her fears had actually grown worse, which the trial court could have determined was a reasonable reaction given John's past violent behavior, the approaching expiration of the first protective order, evidence of John's two violations of that order, and Celeste's testimony that "John doesn't follow the rules" and had not obeyed parts

---

[10] Celeste testified to multiple fears she has regarding what John may do to her and the children in the future: "I'm afraid he's going to knock on my door and try to take my children . . . he's capable of doing it, it will happen," "I'm afraid he's going to . . . come and get me or something. It's not going to be good," and "I am scared he's going to do something to me. I'm going to be on 20/20 dead so he can take the children."

11

of the divorce decree. Based on this evidence, we conclude that the trial court's finding was not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Ortiz*, 917 S.W.2d at 772. Accordingly, we overrule John's first issue.[11]

### *Attorney's Fees*

In his second issue, John contends that "if the family violence protective order is reversed on appeal, the trial court's order awarding attorney's fees to Celeste must also be reversed." John does not present any other challenge to the attorney's fees award. Having held that sufficient evidence supports the protective order, we do not reach John's second issue.

We affirm the trial court's order.


/s/            Martha Hill Jamison
               Justice

Panel consists of Chief Justice Frost and Justices Jamison and Wise

---

[11] As mentioned above, Celeste alleged in her application for a new protective order that "during the pendency of the [first] order John . . . indicated that if he ever gets visitation rights to the children, he will take them out of . . . Texas, and never return them," and he had threatened to take the children after the expiration of the first protective order and keep them away from her for the same amount of time that he was ordered to stay away. Although there was no testimony at the hearing in support of these contentions, we note that had there been, it would have considerably strengthened the evidence in support of the trial court's finding. Regardless, the evidence presented was legally and factually sufficient.